Seffatollah SARMADI, a.k.a. Seff
Sarmadi, a.k.a. Michael
Flores, Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 96–70785.

United States Court of Appeals,
Ninth Circuit.

Submitted July 11, 1997. *

Decided Aug. 11, 1997.

Antonio Salazar, Salazar Law Offices, Se-
attle, WA, for petitioner.

Gretchen M. Wolfinger, Office of Immigra-
tion Litigation, United States Department of
Justice, Washington, DC, for respondent.

Before: REAVLEY,** O'SCANNLAIN,
and FERNANDEZ, Circuit Judges.

* The panel unanimously finds this case suitable for
decision without oral argument.   Fed. R.App. P.
34(a);   9th Cir. R. 34–4.

** The Honorable Thomas M. Reavley, Senior Unit-
ed States Circuit Judge for the Fifth Circuit,
sitting by designation.

O'SCANNLAIN, Circuit Judge:

We must decide whether we have jurisdiction to review a Board of Immigration Appeals' denial of a motion to reopen deportation proceedings where an alien has been ordered deported on account of his conviction for certain crimes.

## I

Seffatollah Sarmadi is a forty-three year old native and citizen of Iran. He arrived in the United States in 1973 to receive training as a member of the Iranian Air Force. He deserted the Iranian Air Force later that year and remained in the United States. In 1981, Sarmadi married a woman who eventually became a naturalized U.S. citizen in 1982. Sarmadi became a lawful permanent resident in 1983.

In 1985, Sarmadi was convicted of two counts of indecent liberties pursuant to Washington State law. Wash. Rev.Code § 9A 44.100(1)(a) and (b) (1979). The first violation occurred on December 22, 1984, and the second on February 9, 1985, involving the minor daughters of Mrs. Sarmadi, Seffatollah's stepdaughters. He was sentenced to twenty months incarceration on the first count and twenty-one months on the second count, terms running concurrently. Sarmadi served sixteen months.

In a Superseding Order to Show Cause dated June 6, 1986, the Immigration and Naturalization Service ("INS") charged that Sarmadi was subject to deportation for having been convicted of two crimes of moral turpitude not arising out of a single scheme of criminal misconduct. *See* 8 U.S.C. § 1251(a)(4) (pre–1991 statute). On January 6, 1987, the Immigration Judge ("IJ") found Sarmadi deportable and denied his application for relief. The IJ found that although the two crimes were of similar nature, they were two separate events on different dates involving different victims; therefore, they did not arise out of a single scheme. Five years later, in 1992, the Board of Immigration Appeals ("BIA") upheld the IJ's decision, and the following year we affirmed in an unpublished disposition. *Sarmadi v. INS,* 15 F.3d 1089 (9th Cir.1993).

The INS notified Sarmadi that he should report to an immigration officer on March 21, 1994, for deportation. Sarmadi failed to appear on that date and his immigration bond was breached. The next day, Sarmadi filed a motion to reopen in order to apply for suspension of deportation. He claimed that there were mitigating circumstances that the BIA did not consider, including the hardship his deportation would cause his wife. The BIA denied this motion in May 1994, due to Sarmadi's statutory ineligibility for the relief he sought. The BIA further held that there was not sufficient evidence that Sarmadi or his wife would suffer exceptional or unusual hardship. Furthermore, the BIA did not exercise discretion in his favor because Sarmadi had failed to appear for deportation.

Sarmadi was again ordered to surrender for deportation on January 22, 1996, yet again he failed to appear. He instead filed a second motion to reopen with the BIA and sought suspension of deportation on January 24, 1996. *See* 8 U.S.C. § 1254(a)(2). He argued that he was statutorily eligible for suspension of deportation since he could now show that he had been continuously present in the United States for ten years since his criminal convictions. On September 24, 1996, the BIA denied the second motion to reopen and for the third time denied the request for a suspension of deportation. Three days later, Sarmadi filed this petition for review.

## II

█ The government argues that we must dismiss this petition for review because various amendments enacted in 1996 to the Immigration and Nationality Act ("INA") deprive us of jurisdiction.

The Anti–Terrorism and Effective Death Penalty Act ("AEDPA") amended the INA to preclude judicial review of final orders of deportation involving aliens convicted of certain covered crimes. *See* § 440(a) of the AEDPA, Pub.L. No. 104–132 § 440(a), 110 Stat. 1214 (1996); *see also Duldulao v. INS,* 90 F.3d 396, 398–99 (9th Cir.1996). Section 440(a) of the AEDPA was further amended by § 306(d) of the Illegal Immigration Re-

form and Immigrant Responsibility Act ("IIRIRA"), which expanded the coverage of § 440(a) to include additional crimes.[1] As amended, § 440(a), in relevant part, now deprives this Court of jurisdiction to review final orders of deportation for aliens who, among other things, are found deportable for having committed two or more crimes of moral turpitude not arising from a single scheme of criminal misconduct, where a sentence of at least a year was imposed for each crime. *See Perez v. INS*, 116 F.3d 405, 407–08 (9th Cir.1997).

There is no question that under the 1996 amendments to the INA we would lack jurisdiction to review the BIA's final order of deportation against Sarmadi. However, Sarmadi asks us to review only the BIA's denial of his motion to reopen his deportation proceedings so that he may apply for relief from a final order of deportation. We must therefore determine whether the amended § 440(a), which precludes review of Sarmadi's "final order of deportation," likewise deprives us of jurisdiction to review the BIA's order denying his motion to reopen in these circumstances.

## A

There is no explicit statutory basis for our jurisdiction to review the BIA's denial of motions to reconsider or to reopen deportation proceedings. *See Chow v. INS*, 113 F.3d 659, 664 (7th Cir.1997). Instead, we have assumed that jurisdiction over these orders is included in our jurisdiction over final orders of deportation. INA § 106(a), 8 U.S.C. § 1105a(a).

Over thirty years ago, the Supreme Court in a one sentence decision reversed our conclusion that we lacked jurisdiction to review the BIA's denial of a motion to reopen. *See Giova v. Rosenberg*, 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90 (1964). Since that time we have assumed that our jurisdiction to

review "final orders of deportation" includes jurisdiction over motions to reconsider or to reopen deportation proceedings. *See e.g., Caruncho v. INS*, 68 F.3d 356, 358 (9th Cir. 1995) (holding that court has jurisdiction over motion to reopen under 8 U.S.C. § 1105a); *Wiedersperg v. INS*, 896 F.2d 1179, 1181 (9th Cir.1990) (citing *Giova v. Rosenberg* for the proposition that denial of motion to reopen is a final order reviewable by the court); *Williams v. INS*, 795 F.2d 738, 743 (9th Cir.1986) (explaining that petitions to reopen are "intimately and immediately associated with the final orders they seek to challenge") (internal citation omitted).

We agree with the Seventh Circuit's explanation of the genesis of our jurisdiction over motions to reconsider or to reopen:

> [C]ourts have construed 'order of deportation' as used in [INA] section 106(a)'s general grant of jurisdiction over petitions for review to include BIA orders, such as the instant orders [denying a motion to reopen], and have extended our jurisdiction to review final orders of deportation under section 106(a) to include jurisdiction over petitions for review from such orders .... *see Giova v. Rosenberg*, 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90 (1964).

*Chow*, 113 F.3d at 664.

Because jurisdiction over these related orders are thus intertwined, the Seventh Circuit has concluded that § 440(a)'s withdrawal of judicial review over final orders of deportation also withdraws jurisdiction from motions to reconsider or to reopen deportation proceedings for those aliens deportable for having committed a crime enumerated in the statute. *See Chow*, 113 F.3d at 663–64 ("Any 'final order of deportation' as used in 440(a) includes orders to reconsider or to reopen any such final order of deportation and removes from our jurisdiction Mr. Chow's appeal."). We agree.

---

1. Section 306(d) of the IIRIRA amended § 440(a) by removing consideration of the dates on which crimes of moral turpitude were committed. *See Perez v. INS*, 116 F.3d 405, 407–08 (9th Cir.1997). The amended § 440(a) reads, in relevant part, as follows:

   [A]ny final order of deportation against an alien who is deportable by reason of having

   committed ... any offense covered by *section* 1227(a)(2)(A)(ii) of this title for which both predicate offenses, *without regard to the date of their commission, otherwise* are covered by section 1227(a)(2)(A)(i) of this title, shall not be subject to review by any court.

   8 U.S.C. § 1105(a)(10) (emphasis added).

B

■ We also agree with the Seventh Circuit's conclusion that other recent changes to the INA did not alter our traditional understanding that the denial of a motion to reconsider or to reopen generally does fall within our jurisdiction over final orders of deportation. Section 440(b) of the AEDPA defines the term "final order of deportation" and is silent with respect to motions to reconsider or to reopen. However, other provisions of the AEDPA make it clear that Congress did not intend this definition to eliminate our jurisdiction over the BIA's denial of a motion to reopen or to reconsider.

Before Congress enacted the AEDPA, section 106 provided that "whenever a petitioner seeks review of an order under this section, any review sought with respect to a motion to reopen or reconsider such an order shall be consolidated with the review of the order." 8 U.S.C. § 1105a(a)(6) (Supp.1996). The AEDPA did not alter this provision. After Congress enacted the AEDPA, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). Pub.L. No. 104–208, division C, 110 Stat. 3009 (1996). The IIRIRA repeals section 106 of the INA and replaces it with another judicial review provision. IIRIRA § 306(a) & (b). This new judicial review provision adopts a consolidation section that is substantially similar to the provision contained in the old section 106. IIRIRA § 306(a). If Congress intended to abrogate judicial review of orders denying motions to reconsider and motions to reopen by omitting such orders from its definition of "order of deportation" in section 440(b), the consolidation section in the new judicial review provision would be meaningless.

*Chow,* 113 F.3d at 664. *See also Choeum v. INS,* 118 F.3d 17, 29 (1st Cir.1997) (concluding that 1996 amendments to the INA do not alter the court's traditional understanding of jurisdiction over motions to reconsider or reopen).

We agree that § 440(b)'s definition of a "final order of deportation" does not generally preclude review of orders denying motions to reconsider or to reopen deportation proceedings. However, where Congress explicitly withdraws our jurisdiction to review a final order of deportation, our authority to review motions to reconsider or to reopen deportation proceedings is thereby likewise withdrawn.

III

■ We conclude in conformity with the Seventh Circuit that the term "final order of deportation" in § 440(a) of the AEDPA includes orders denying a motion to reconsider or to reopen deportation proceedings. Where an alien has been ordered deported for crimes covered in § 440(a), we lack jurisdiction to review the BIA's denial of a motion to reopen or to reconsider its decision.

DISMISSED.